# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Redline Metals, Inc., | ) | NO. 24-12590 |
| Debtor. | ) | |
| | ) | Chapter 11 |
| | ) | |
| | ) | Honorable Judge Jacqueline P. Cox |

## NOTICE OF EMERGENCY MOTION

TO: See attached list

PLEASE TAKE NOTICE that on August 30, 2024, at 9:30 a.m., I will appear before the Honorable Janet S. Baer, or any judge sitting in that judge's place, either in courtroom 615 of the Dirksen Federal Building, 219 S. Dearborn, Chicago, Illinois, or electronically as described below, and present Redline Metals, Inc.'s **MOTION FOR AUTHORITY TO PAY PRE-PETITION CLAIMS FOR WAGES, SALARIES AND REIMBURSABLE EXPENSES,** a copy of which is attached.

Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person. To appear by Zoom using the internet, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode. To appear by Zoom using a telephone, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode. Meeting ID and passcode. The meeting ID is 160 731 2971, and the passcode is 587656. The meeting ID and passcode can also be found on the judge's page on the court's web site.

In addition to other grounds for opposing the motion, you may oppose the motion on the basis that emergency treatment is not appropriate.

By: /s/ Paul M. Bach
Mr. Paul M. Bach, Esq.
Ms. Penelope N. Bach, Esq.
Bach Law Offices, Inc.
Attorneys At Law
P.O. Box 1285
Northbrook, Illinois 60062
Phone (847) 564 - 0808

1

Certificate of Service[1]

      I, Paul Bach, hereby certify that I caused a copy of this notice to be served by ECF Electronic Delivery on the service list below upon the above parties listed on August 28, 2024 from Northbrook, IL.

      BY:   S/ PAUL M. BACH
            BACH LAW OFFICES, INC.
            P.O. BOX 1285
            NORTHBROOK, IL 60062
            PHONE: (847)564 0808
            ATTORNEY NO: 6209530

SERVICE LIST

**Patrick Laying, Office of the US Trustee**
Region 11
219 S Dearborn Street Rm 873
Chicago, IL 60604

**Kurt M. Carlson**
Carlson Dash LLC
216 S. Jefferson St.
Suite 303
Chicago, IL 60661

**Morgan I Marcus**
Carlson Dash, LLC
216 S Jefferson St
Ste 504
Chicago, IL 60661

**Lina Toma**
Carlson Dash LLC
216 S. Jefferson Street
Suite 504
Chicago, IL 60661

**Adam B. Rome**
Greiman, Rome & Griesmeyer, LLC
205 West Randolph
Suite 2300
Chicago, IL 60606

---

[1] The secured lender is Old Second National Bank which is represented by counsel who counsel have filed appearances on the court's docket. Other creditors will be served at a continued date as only interim relief is being requested on August 30, 2024. The Proposed Order will be filed after consultation with the secured lender on August 29, 2024

2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Redline Metals, Inc., | ) | NO. 24-12590 |
|           Debtor. | ) | |
| | ) | Chapter 11 |
| | ) | |
| | ) | Honorable Judge Jacqueline P. Cox |

**MOTION FOR AUTHORITY TO PAY PRE-PETITION CLAIMS FOR WAGES,**
**SALARIES AND REIMBURSABLE EXPENSES**

NOW COMES the debtor, Redline Metals, Inc., by and through its attorneys Paul M. Bach and Penelope N. Bach, of Bach Law Offices, Inc., debtor-in-possession in this Chapter 11 case (the "Debtor"), respectfully moves the Court for an order: (a) authorizing the Debtor to pay accrued prepetition claims for (i) wages and salaries that do not exceed the $12,850.00-per-employee priority amount set by 11 U.S.C. § 507(a)(4) for the Debtor's employees, (ii) withholdings, and (iii) reimbursable employee expenses; (b) authorizing the Debtor to continue providing all employee benefits by paying amounts that do not exceed the $12,850.00-per-employee priority amount set by 11 U.S.C. § 507(a)(5); and (c) directing the Debtor's bank to honor all checks and electronic payment requests related to the foregoing. This Motion seeks immediate entry of an order and is brought on an emergency basis under Local Bankruptcy Rule 9013-1 to avoid immediate and irreparable harm to the Debtor's estate. This Motion is supported by the entire record before the Court and by the following:

**Background and Jurisdiction**

1.      On August 27, 2024, the Debtor filed a voluntary case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

3

2. This Court has jurisdiction over this Chapter 11 case under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Debtor consents to the Court's entry of a final order on this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection with this Motion consistent with Article III of the United States constitution. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. 3. The statutory bases for the relief this Motion seeks are Bankruptcy Code §§ 105(a), 363(b), and 507(a)(4) and (5) and Bankruptcy Rules 6003 and 6004.

3. Debtor, Redline Metals, Inc. ("Debtor") owns and operates a scrap metal recycling business where the Debtor buys metal buy from manufacturers and other scrap dealers and the public to sell to mills for re melt of the metal.

4. The Debtor pays its employees every two weeks and the next scheduled payroll date is August 30, 2024. Without the use of cash collateral, the Debtor will be unable to pay employees on August 30, 2024. The total amount of the payroll on August 30, 2024 is $80,000.00.

**The Debtor's Workforce**

5. As of the Petition Date, the Debtor employs forty-two full-time employees of which eight are salaried employees and the balance hourly employees.

6. Without exception, the Debtor's employees are critical to the continuity of the Debtor's business and the value of the Debtor's assets and estate. All employees' skills, knowledge, and understanding of the Debtor's operations are essential to maintaining the Debtor's business as a going concern and maximizing the value of the Debtor's assets for disposition in the context of this Chapter 11 case. Without the

4

employees' continued services, an effective sale of the Debtor's assets and operations will not be possible.

7. The Debtor's obligations to its employees include wages, salaries, payments and payroll deductions for employee benefits and withholdings. Employees also have medical insurance. Before the Petition Date, the Debtor customarily either paid or withheld all of these obligations in the ordinary course of business.

**Wages and Salaries**

8. All employees are paid bi-weekly, every other Friday, seven days in arrears, through direct deposit or checks. Each Friday before a Friday payroll day, the Debtor transfers funds to the payroll service to fund the payroll, which is paid the next day via direct deposit for those employees that have electronic deposits and via checks drawn from the payroll service's bank account as and when employees negotiate their checks.

9. The Debtor's next payroll is scheduled for August 30, 2024, relating to the period from August 18, 2024, through August 24, 2024. The aggregate payroll on August 30, 2024 will be approximately $80,000.00.

10. The Debtor has remained current on all its payroll obligations to its employees at all times up to the Petition Date. Accordingly, the payroll amount owing to any single employee attributable to the prepetition period is well under the priority amount of $12,850. The Debtor seeks authority to continue its payroll in the ordinary course of business, including the payment of all employee wages and salaries relating to the prepetition period. If the Debtor is unable to do so, the Debtor's employees may resign their positions with the Debtor at a time when employees' services are crucial to the Debtor and its success in this Chapter 11 case.

**Withholding**

11.     The Debtor is required by law to withhold from an employee's paycheck amounts related to federal and state income taxes and social security, FICA, and unemployment taxes (collectively, the "Withholding Taxes") for remittance to the appropriate governmental authorities. The Debtor must also match from its own funds social security and Medicare taxes withheld and pay (based on a percentage of gross payroll) additional amounts for state and federal unemployment insurance (the "Employer Payroll Taxes"). To the extent that any payroll has not been processed for the prepetition period, the Debtor has not funded either the Withholding Taxes or the Employer Payroll Taxes. Accordingly, the Debtor seeks authority to continue to process and remit all prepetition Withholding Tax and Employer Payroll Tax obligations in the ordinary course of business.

**Reimbursable Expenses**

12.     Operational expenses incurred on the Debtor's behalf ("Employee Expenses") consist of expenses accrued by employees who submit those expenses to the Debtor for reimbursement. Employee Expenses include, among other things, business travel expenses, local travel expenses, parking, and other minor, episodic expenses. Generally, the Debtor expects employees to submit Employee Expenses for reimbursement as soon as possible after they are incurred but, because some employees may not yet have submitted their Employee Expenses incurred before the Petition Date, the Debtor cannot accurately estimate the amount of Employee Expenses that remain unreimbursed for the prepetition period. Based on historical averages, the Debtor believes that there may be approximately $300.00 in unreimbursed Employee Expenses attributable to the prepetition period. The Debtor seeks authority to reimburse employees

for their prepetition Employee Expenses in the ordinary course of business. If the Debtor is unable to do so, the individual employees will unfairly bear the burden of having paid the Debtor's expenses from their personal funds, severely undermining employee morale at a time when these employees' best efforts are crucial to the Debtor and its success in this Chapter 11 case.

## Employee Benefits

13.     Full-time W-2 employees are eligible to participate in medical insurance plans offered by the Debtor.  Debtor seeks authority to pay for the medical insurance plans in the ordinary course of business. If the Debtor is unable to do so, the individual employees will lose the medical coverage severely undermining employee morale at a time when these employees' best efforts are crucial to the Debtor and its success in this Chapter 11 case.

## RELIEF REQUESTED

14.     To ensure employees' continued dedication and morale during this critical time and to minimize the personal hardship employees would suffer if prepetition employee-related obligations are not paid when due or as expected, the Debtor seeks entry of an order authorizing the Debtor: (a) to pay prepetition claims (collectively, the "Employee Obligations") for (i) wages and salaries, (ii) federal and state withholding taxes, and (iii) Employee Expenses; and (b) to continue to pay for and provide a few employees with medical coverage and the Debtor has historically paid in the ordinary course of business (collectively, the "Employee Benefits"). The Debtor also seeks an order directing its bank to honor all checks presented for payment and electronic payments related to the Employee Obligations and Employee Benefits.

15. By this Motion, the Debtor requests that this Court enter an order under Bankruptcy Code §§ 105(a), 363(b), and 507(a)(4) and (5) authorizing the Debtor to pay or otherwise honor the Employee Obligations and Employee Benefits that accrued before the Petition Date.

16. Bankruptcy Code § 363(b)(1) authorizes a debtor-in-possession to "use, sell or lease, other than in the ordinary course of business, property of the estate …." Bankruptcy Code § 105(a) provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Bankruptcy Code § 507(a)(4) and (5) give priority status up to $12,850 per employee for prepetition claims for wages, salaries, vacation, and sick leave, and claims for contributions to employee benefit plans.

17. Because the Debtor has remained current on its employee-related obligations through the most recent pay period, all accrued prepetition obligations owing to individual employees proposed to be paid now will be substantially less than the statutory cap of $12,850 per employee for priority treatment set by Bankruptcy Code § 507(a)(4) and (a)(5). Thus, granting the relief sought in this Motion would only affect the timing, and not the amount, of the payment of the Employee Obligations and Employee Benefits because they constitute priority claims.

18. With respect to the deductions and Withholding Taxes described above, failure to remit those deductions and Withholding Taxes to the proper third parties may cause serious disruption to the Debtor's operations. The deductions and Withholding Taxes represent employee earnings that governments (in the case of taxes), and employees (in the case of voluntarily withheld amounts), have designated for deduction from employees' paychecks. Failure to remit these amounts could result in hardship to

8

the employees and, in the case of Withholding Taxes, do not constitute property of the Debtor's estate.

19. The Debtor's employees rely on their full compensation and reimbursement of expenses to meet their daily living expenses and will be exposed to significant financial difficulties if the Debtor is not permitted to pay the Employee Obligations and Employee Benefits. The Debtor's failure to meet its obligations to its employees in the ordinary course would destroy employee morale and likely cause most employees to simply resign, inflicting immediate and pervasive damage to the Debtor's ongoing business operations. The resulting harm to the Debtor's estate and the value of the estate's assets would be immediate, irreparable, and incalculable.

20. Under the "necessity of payment" rule first enunciated by the Supreme Court in *Miltenberger v. Logansport*, C. & S.W.R. Co., 106 U.S. 286 (1882), a bankruptcy court may use its § 105 equitable powers to permit a debtor-in-possession to pay prepetition claims when payment is necessary to effect a successful reorganization. Its employees' continued service and dedication is critical to the Debtor's success in this Chapter 11 case and the preservation of the value of the Debtor's assets. Courts have long recognized the importance of a debtor's ability to pay prepetition wages, permitting debtors-in-possession to pay prepetition wage, salary, expense, and benefit claims if payment of those claims was necessary to effect a successful reorganization. Relief similar to that requested by this Motion has been routinely granted in Chapter 11 cases within this District.

21. The relief requested in this Motion is necessary and should be authorized under Bankruptcy Code § 105.

22. The Debtor's employees are vital to the continued operation of the Debtor's business. Authorizing the Debtor to pay the Employee Obligations and honor the Employee Benefits is necessary to maintain employee morale and to prevent employees from suffering personal hardship or from seeking other employment. Accordingly, the relief sought in this Motion is consistent with Bankruptcy Code §§ 105(a) and 507(a).

## NECESSITY FOR IMMEDIATE RELIEF

23. Under Bankruptcy Rule 6003(b), the Debtor seeks immediately entry of an order granting this Motion. Bankruptcy Rule 6003(b) provides that "Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting … a motion to pay all or part of a claim that arose before the filing of the petition …" The record establishes that the Debtor's estate, ongoing business operations, going-concern value, and prospects for a successful reorganization will suffer immediate and irreparable harm if the Debtor is unable to honor its obligations to its employees and the Debtor abruptly loses the service of those employees. Accordingly, the Debtor submits that ample cause exists to justify immediate entry of an order granting this Motion.

24. Further, under Bankruptcy Rule 6004(h), "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth throughout this Motion and the record, ample cause exists to waive that 14-day stay, since any delay in satisfying the employee obligations described above would jeopardize the Debtor's business operations and reorganization efforts to the detriment of the Debtor's estate and

creditors. Because cause exists to do so, the Debtor requests that the Court waive the 14-day stay on any order granting the relief requested in this Motion.

## Conclusion

25. For the foregoing reasons, the Debtor respectfully requests that the Court enter an order substantially the form attached to this Motion: (a) authorizing the Debtor to pay and honor the Employee Obligations; (b) authorizing the Debtor to continue to provide the Employee Benefits in the ordinary course of business; (c) directing the Debtor's bank to honor all checks and electronic payment requests related to the foregoing; and (e) granting any further appropriate relief.

> Respectively Submitted,
>
> Redline Metals, Inc.
>
> By: /s/ Paul M. Bach

Mr. Paul M. Bach, Esq.
Ms. Penelope N. Bach, Esq.
Bach Law Offices, Inc.
Attorneys At Law
P.O. Box 1285
Northbrook, Illinois 60062
Phone (847) 564 - 0808