UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

In Re:                                    )         BK No.:    24-12590
Redline Metals, Inc.                      )
                                          )
                                          )         Chapter:  11
                                          )         Honorable Jacqueline Cox
                                          )
                                          )
      Debtor(s)                           )

## ORDER APPROVING SALE OF ALL OR SUBSTANTIALLY ALL OF DEBTOR'S ASSETS AND GRANTING RELATED RELIEF

Upon consideration of the Debtor's Motion for Order (i) Authorizing and Approving Procedures for the Sale of the Debtor's Assets; (ii) Scheduling a Sale Hearing; (iii) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Sale; (iv) Approving Sale of Property Free and Clear of Interests; (v) Shortening Notice Period; and (vi) Approving Form of Notice of Sale filed by the above-captioned Debtor and Debtor-in-Possession (Docket No. 174) (the "Motion"); and the Order approving the Motion having been entered by this Court on December 26, 2024 (Docket No. 190) (the "Sales Procedure Order"); and the Debtor having filed the Notice of Sale on December 27, 2024 (Docket No. 195); and the Debtor having filed the Debtor's Report of Designation of Stalking Horse Bidder Pursuant to the Bid Procedures on January 13, 2025 (Docket No. 227); and the Debtor having filed the Notice of Receipt of More than One Qualified Bid and that an Auction Will Take Place on January 23, 2025 at 1:00 p.m. at the offices of Rally Capital Advisors on January 17, 2025 (Docket No. 243); and an auction (the "Auction") having been held and concluded on January 23, 2025 for substantially all of the Debtor's assets; and a Report of Concluded Auction having been filed January 27, 2025, identifying PPL Acquisition Group XIX, LLC, bidding jointly with United Scrap Metal, Inc. as the winning bid (the "Winning Bid"), and the bid of Nations Capital, LLC, bidding jointly with Bridgeport Scrap Metal LLC, as the back-up bid (the "Back-Up Bid") (Docket No. 269); and a hearing having been held January 28, 2025, on approval of the Winning Bid; and such hearing continued to February 7, 2025 at 1:30 pm Central; and the continued hearing on approval of the sale having been held on February 7, 2025; and it appearing that a sale of the Debtor's assets to PPL Acquisition Group XIX, LLC, bidding jointly with United Scrap Metal, Inc (the "Purchaser") is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion and the Auction having been given and it appearing that no other notice need be given; and the Debtor and Andrew J. Cameron, the Debtor's Chief Restructuring Officer ("CRO"), in consultation with Old Second National Bank and the Official Committee of Unsecured Creditors, having agreed upon the terms and conditions for the Purchaser to acquire substantially all of the assets of the Debtor (the "Assets") pursuant to the terms and conditions set forth in the Amended and Restated Asset Purchase Agreement by and between the Purchaser and the Debtor (the "APA") attached hereto as Exhibit 1; and the transaction represented by the APA having been determined to be the highest and best offer for the Assets; provided further, that should the Purchaser fail to consummate the sale, as contemplated by this Order, the Bid Procedures Order and the APA, the Debtor is authorized to consummate the sale of the Assets to Nations Capital, LLC, bidding jointly with Bridgeport Scrap Metal LLC, (the "Back-Up Bidder") for the terms and conditions set forth in their Back-up Bid; and appearances of all interested parties having been noted on the record of the

Rev: 20120501_bko

Sale Hearing; and upon the Declarations filed in support of the Motion; and upon all of the proceedings at the Sale Hearing (including but not limited to the testimony and other evidence proffered or adduced at the Sale Hearing); and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, its estate, its creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:

The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed afforded to all interested persons and entities, including, without limitation, the following: (i) the United States Trustee for the Northern District of Illinois; (ii) counsel to the Committee; (iii) counsel for Old Second National Bank; (iv) the Debtor's 20 largest unsecured creditors; (v) the United States Attorney's Office for the Northern District of Illinois; (vi) the Internal Revenue Service; (vii) all parties who have expressed a written interest in some or all of the Assets; (viii) each governmental agency that is an interested party with respect to the sale; (ix) all parties which, to the best of the Debtor's knowledge, information, and belief, had asserted or then may have asserted a lien in any of the Debtor's Assets, (x) all parties to executory contracts and unexpired leases proposed to be assumed and assigned, or rejected, as part of the proposed transaction; and (xi) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rules 2002 and 9010(b). Objections, if any, to the Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled.

A. Jurisdiction: This Court has jurisdiction to consider the sale of the Debtor's Assets, the transaction contemplated by the APA, the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134 and approval of the Debtor's entry into the APA and the performance of the transaction contemplated thereby is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (0).

B. Venue: Venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. Statutory Predicates: The statutory predicates for the approval of the APA and the transaction contemplated therein (i) sections 105 and 363 of the Bankruptcy Code; and (ii) Bankruptcy Rules 2002 (a)(2), 6004, 6006, 9007, and 9014.

D. Notice: Proper, timely, adequate and sufficient notice of the Motion, the relief requested therein and the Sale Hearing has been provided in accordance with sections 102(1), 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014, and in compliance with the Bid Procedures Order, including without limitation to the Notice Parties. No other or further notice is required.

E. Opportunity to be Heard: A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transaction pursuant thereto has been provided.

F. Marketing Process: As demonstrated by: (i) Declaration of Andrew J. Cameron (ii) the testimony and other evidence proffered or adduced at the Sale Hearing and (iii) the representations of counsel made on the record at the Sale Hearing, the Debtor has thoroughly marketed the Assets and has conducted the bidding solicitation fairly, with adequate opportunity for parties that either expressed an interest in acquiring or liquidating the Assets, or who the Debtor believes may have an interest in

acquiring or liquidating the Assets, to submit competing bids. The Debtor and Purchaser have respectively negotiated and undertaken their roles leading to the sale, entry into the APA and the transaction contemplated thereby in a diligent, non-collusive, fair and good faith manner.

G. Highest and Best Offer: The APA, including the form and total consideration to be realized by the Debtor pursuant to the APA, (i) constitutes the highest and best offer received by the Debtor for the Assets, (ii) is fair and reasonable, and (iii) is in the best interests of the Debtor, its estate, their creditors and all other parties in interest. There is no legal or equitable reason to delay entry into the APA and the transactions contemplated therein (the "Sale").
H. Business Judgment: The Debtor's decision to (i) enter into the APA, and (ii) perform as required by the APA, is a reasonable exercise of the Debtor's sound business judgment consistent with its fiduciary duties and is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

I. Time of the Essence: Time is of the essence in effectuating the APA and proceeding with the Sale of the Assets contemplated therein without interruption. Based on the record of the Sale Hearing, and for the reasons stated on the record at the Sale Hearing, the Sale pursuant to the APA must be commenced as soon as reasonably practicable after entry of this Order to maximize the value that the Debtor may realize from entering into the APA. Accordingly, cause exists to vacate the stay to the extent necessary, as contemplated by Bankruptcy Rule 6004(h) and permit the immediate effectiveness of this Order.

J. Sale Free and Clear: A sale of the Assets, other than one free and clear of liens, claims, encumbrances, defenses (including, without limitation, rights of setoff and recoupment) and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Interests or Claims") and without the protections of this Order would hinder the Debtor's ability to obtain the consideration provided for in the APA and, thus, would impact materially and adversely the value that the Debtor's estate would be able to obtain for the sale of the Assets. But for the protections afforded to the Purchaser under the Bankruptcy Code and this Order, the Purchaser would not have offered to pay the consideration contemplated in the APA. The Old Second National Bank has consented to the sale of the Assets pursuant to the APA subject to its lien attaching to the proceeds from the Purchase Price, as defined in the APA, in accordance with a further Order of this Court consistent therewith. In addition, each entity with an Interest or Claim upon the Assets, (i) has either consented to the Sale, has not objected, or is deemed to have consented to the Sale, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests or Claims who did not object, or who withdrew objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy

Code. Therefore, approval of the APA and the consummation of the Sale free and clear of Interests or Claims (with such Interests and Claims attaching to the proceeds of such sale by the Debtor) is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtor's estate, their creditors and other parties in interest.

K. Attachment of Interests or Claims to Proceeds:  Any currently existing Interests or Claims encumbering all or any portion of the Assets shall attach to the amounts to be received by the Debtor under the APA, with the same validity, priority, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist, except that the validity, priority and enforceability of Old Second National Bank's lien has already been established and recognized as valid, prior and enforceable in this Bankruptcy. The Purchaser has not agreed to assume and shall have no obligations with respect to any liabilities of the Debtor or their subsidiaries or affiliates.

L. Arm's-length Sale:  The APA, as well as consideration to be paid by the Purchaser under the APA, was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration for the Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The terms and conditions set forth in the APA are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtor or their creditors under any applicable laws.

M. Good Faith:  The Debtor through the CRO, and the Purchaser, its members and its officers, directors, employees, agents and representatives actively participated in the bidding process and acted in good faith. The Debtor and the CRO, and their advisers, in consultation with Old Second National Bank and the Committee, and after extensive deliberation, determined that the APA constitutes the highest and best offer among rounds of competitive bids received by the Debtor during an Auction held on January 23, 2025. The APA was negotiated and entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in section 363(m) of the Bankruptcy Code. The Purchaser shall be protected as a good faith purchaser by section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal. The Debtor was free to deal with any other party interested in buying or selling on behalf of the Debtor's estate some or all of the Assets. Neither the Debtor nor the Purchaser engaged in any conduct that would cause or permit the Sale, the APA, or any related action or the transaction contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or that would prevent the application of section 363(m) of the Bankruptcy Code. The Purchaser did not violate section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Purchaser has not acted in a collusive manner with any person and was not controlled by any agreement among bidders. The Purchaser's prospective performance and payment of amounts owing under the APA are in good faith and for valid business purposes and uses.

N. Insider Status:  The Purchaser is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between the Purchaser and the Debtor. To the extent that an insider of the Debtor, as determined at the time the Bankruptcy Petition was filed in this case, has or may have an interest in Purchaser or any successor or assign or subsequent purchaser of Purchaser, now or anytime hereafter, the protections afforded by this Sale Order shall not in any manner extend to any such insider.

O. Corporate Authority:  The Debtor through the CRO has full corporate or other power, as confirmed by this Court, and authority to execute, deliver and perform its obligations under the APA and to consummate all transaction contemplated thereby (including, without limitation, entering into and performing under each of the ancillary agreements, instruments or other documents contemplated

by the APA) and entry into, delivery and performance under the APA and consummation of all transaction contemplated thereby (including, without limitation, entering into and performing under each of the ancillary agreements, instruments or other documents contemplated by the APA) has been duly and validly authorized by all necessary corporate or similar action. No consents or approvals, other than those expressly provided for herein or in the APA, are required for the Debtor to consummate such transaction.

P. No Successor Liability: No sale, transfer or other disposition of the Assets pursuant to the APA, entry in the APA or consummation of the transaction contemplated by the APA will subject the Purchaser to any liability for Interests or Claims asserted against the Debtor or the Debtor's interests in the Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories. The Purchaser is not the alter ego of, a successor in interest to or a continuation of the Debtor or its estate and there is no continuity between the Purchaser, on the one hand, and the Debtor, on the other hand. The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not a successor to the Debtor or its estate and consummation of the Sale contemplated by the APA does not amount to a consolidation, merger, or de facto merger of the Purchaser, on the one hand, and the Debtor, on the other hand.

Q. No Sub Rosa Plan: Entry into the APA and the transaction contemplated thereby neither impermissibly restructures the rights of the Debtor's creditors, nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor, if any. Entry into the APA does not constitute a sub rosa chapter 11 plan.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

A. Motion Granted, Objections Overruled

1. The relief requested in the Motion is granted as set forth herein, and the Sale contemplated by this Order and the APA are approved as set forth herein.

2. Should the Purchaser fail to consummate the Sale, as contemplated by this Order, the Bid Procedures Order and the APA, the Debtor is authorized with the advice and consent of Old Second National Bank and the Unsecured Creditor's Committee, as Consultation Parties, to consummate the Sale of the Assets with the Back-up Bidder, on the terms set forth in the Back-up Bid, in which event, the Back-up Bidder and the APA for the Back-up Bid shall be substitute in the place of Purchaser and APA, as applicable in this Order, as if originally set forth herein.

3. Any remaining objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled in all respects and denied.

B. APA Approved and Authorized

4. The APA is approved pursuant to (i) sections 105 and 363, of the Bankruptcy Code; (ii) Bankruptcy Rules 2002(a)(2), 6004, 9007, and 9014. The Debtor is hereby authorized, empowered and directed to enter into and perform under the APA and the transactions contemplated therein (including, without limitation, entering into and performing under each of the ancillary agreements, instruments or other documents contemplated thereby), each of which is hereby approved in its entirety and is incorporated herein by reference. The failure to include specifically any particular provision of the

APA in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA and all of its provisions, payments and transactions, be authorized and approved in its entirety. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

5. All amounts payable by the Purchaser by reason of the APA (the "Sale Proceeds") shall be payable to the Debtor to be held in its DIP account held at Old Second National Bank for distribution pursuant to a further Order of this Court, except that 50% of the Sale Proceeds shall be immediately remitted to Old Second National Bank ("Initial Distribution") and applied first to its Administrative Expense Priority Claim and second to its secured claim, should such Initial Distribution be in excess of the Old Second National Bank's Administrative Expense Priority Claim. At the Closing, $600,000 of the Deposit (as those terms are defined in the APA) shall be returned to the Purchaser in accordance with the APA.

6. Subject to the provisions of this Order, the Debtor and the Purchaser are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to consummate the Sale in accordance with the APA.

7. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor, the Purchaser and each of its respective officers, employees and agents are hereby authorized and directed to execute such documents and to do such acts as are reasonably necessary or desirable to carry out the Sale contemplated by the APA and to effectuate the APA and the transaction contemplated therein. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

C. Order Binding

8. This Order may be presented to any and all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, to facilitate the effectuation of the duties of its office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets. This Order, and the terms and provisions of the APA shall be binding on all of the Debtor's creditors and equity holders (whether known or unknown), the Debtor, its estate, the Purchaser, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting any Interest or Claim against the Debtor or in the Assets and all counterparties to any executory contract or unexpired lease of the Debtor, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding. The provisions of this Order and the terms and provisions of the APA, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) of the Debtor, converting the Debtor's case from chapter 11 to chapter 7 or dismissing the Debtor's case, and the terms and provisions of the APA, as well as the rights and interests granted pursuant to this Order and the APA, shall continue in this or any superseding cases and shall be binding upon the Debtor, Purchaser and its respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in this case shall be and hereby is authorized to operate the business of the Debtor to the fullest extent necessary to permit compliance with the terms of this Order and the APA,

and the Purchaser and the trustee shall be and hereby are authorized to perform under the APA upon the appointment of the trustee without the need for further order of this Court.

### D. Good Faith

9. Entry into the APA is undertaken by the parties thereto in good faith, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and the Purchaser shall be protected as a good faith purchaser by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal. The reversal or modification on appeal of the authorization provided herein to enter into the APA and to consummate the transaction contemplated thereby shall not affect the validity of such transaction, unless such authorization is duly stayed pending such appeal. The Purchaser is entitled to all of the benefits and protections afforded to good faith purchasers by sections 363(m) and 364(e) of the Bankruptcy Code. The transaction contemplated by the APA is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

### E. Conduct of the Sale

10. Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Debtor shall be authorized to sell and transfer to the Purchaser the Assets pursuant to the APA, in each case free and clear of any and all Interests or Claims, whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which this chapter 11 case was commenced, with any presently existing Interests or Claims encumbering all or any portion of the Assets or the proceeds thereof attaching only to the proceeds with the same validity, priority, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist.

11. If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, lis pendens or other documents or agreement evidencing Interests or Claims on or in the Assets shall not have delivered to the Debtor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Interests or Claims which the person or entity has with respect to the Assets, each such person or entity is hereby authorized and directed to deliver all such statements, instruments and releases and Debtor and the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Debtor and the Purchaser are authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such Interest or Claim. Each and every federal, state and local governmental unit is hereby authorized to accept any and all documents and instruments necessary or appropriate to give effect to the Sale contemplated by the APA. Moreover, effective as of the Closing, the Purchaser (and its successors and assigns) shall be designated and appointed the Debtor's true and lawful attorney, with full power of substitution, in the Debtor's name and stead, on behalf and for the benefit of the Purchaser (and its successors and assigns), to demand and receive any and all of the Assets and to give receipts and releases for and in respect of the Assets, or any part thereof, and from time to time to institute and prosecute in the Debtor's name, for the benefit of the Purchaser (and its successors and assigns), any and all proceedings at law, in equity or otherwise, which the Purchaser (and its successors and assigns) may deem proper for the collection or reduction to possession of any of the Assets, and to do all acts and things with respect to the Assets which the Purchaser (and its successors and assigns) shall deem desirable. The foregoing powers are coupled with an interest and are and shall be irrevocable by the Debtor.

12. All entities that are presently in possession of some or all of the Assets hereby are directed to surrender possession of such Assets or other property to the Purchaser. The Assets are sold free and clear of any "possessory liens" and the like.

13. Nothing in this Order or APA releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order. Nothing contained in this Order or APA shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtor to comply with environmental laws consistent with their rights and obligations as Debtor in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Purchaser is an operator with respect to any environmental law or regulation. Moreover, the Sale shall not be exempt from, and the Purchaser shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws (collectively, "General Laws"). Nothing in this Order shall alter or affect the Debtor's and the Purchaser's obligations to comply with all applicable federal safety laws and regulations. Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in Bankruptcy Code section 101(27)) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtor's and the Purchaser's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Order. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

14. Except as expressly provided for herein or in the APA, no person or entity, including but not limited to any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sale pursuant to the terms of the APA, and all such parties and persons of every nature and description, including landlords, licensors, creditors and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding, the consummation of the sale of the Assets to the Purchaser or the conduct of the Sale and/or (ii) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtor or the Purchaser that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the consummation of the Sale and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

15. The Purchaser shall not have any obligation, as successor or otherwise (including, without limitation, with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans), or any other payment to employees of the Debtor or any of its affiliates, and the Purchaser shall not have any liability, as successor or otherwise (including, without limitation, with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, with respect to the following (collectively, the "Employee Obligations"): (a) any employment or labor agreements (including, without limitation, any collective bargaining agreements), consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which any Debtor or any of its affiliates are a party; (b) any pension, welfare, compensation, retention, incentive or other employee

benefit plans, agreements, practices, or programs to which any Debtor or any of its affiliates are a party, including, without limitation, any pension plan at any time sponsored, maintained, contributed to, or required to be contributed to by any of the Debtor, any of its affiliates or any member of any of its respective controlled groups (within the meaning of Sections 414(b), (c), (m) or (o) of the Internal Revenue Code or Section 4001(b)(1) of Employee Retirement Income Security Act of 1974, as amended ("ERISA"); (c) the cessation of the Debtor's operations, dismissal of employees, or termination (including, without limitation, rejection) of employment or labor agreements (including, without limitation, any collective bargaining agreements), consulting agreements, severance agreements, change-in-control agreements, other similar agreements or pension, welfare, compensation, retention, incentive or other employee benefit plans, agreements, practices, programs, or obligations that might otherwise arise from or pursuant to ERISA, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Worker Adjustment and Retraining Notification Act or otherwise; or (d) workmen's compensation or occupational disease, unemployment, or temporary disability insurance claims (any agreement, plan, policy, practice, arrangement, or program described in (a) through (d), collectively the "Employee Arrangements"). The Purchaser shall not in any way, as successor or otherwise (including, without limitation, with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, be deemed a party to or assignee of any Employee Arrangement, and no employee of the Purchaser shall be deemed in any way covered by or a party to any Employee Arrangement, and all parties to any Employee Arrangement are hereby enjoined from asserting against the Purchaser any and all Interests or Claims arising from or relating to such Employee Arrangement. Any and all notices, if any, required to be given to the Debtor's or its Affiliates' employees pursuant to the Workers Adjustment and Relocation Adjustment Act, or any similar federal, state or other applicable law, shall be the sole responsibility and obligation of the Debtor and its affiliates, and the Purchaser shall have no responsibility or liability therefor. Except as expressly set forth in the APA, the Assets are transferred by the Debtor to the Purchaser free and clear of all Employee Obligations and all Employee Arrangements.

F. Asset Provisions

16. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized and directed without further order of this Court to sell and transfer the Assets to the Purchaser pursuant to, and in accordance with, the terms and conditions of the APA and this Order and to take any and all actions necessary or appropriate to (a) consummate the Sale contemplated by the APA, pursuant to and in accordance with the terms and conditions of the APA and this Order, (b) transfer and assign all right, title, and interest (including, without limitation, common law rights) to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of the APA, and (c) execute and deliver, perform under, consummate, implement, and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale contemplated by the APA, including, without limitation, any ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such ancillary documents.

17. Subject to the entry of this Order and terms and conditions of this Order, the transfer of Assets to the Purchaser pursuant to the APA does not require any consents other than as specifically provided for in the APA and constitutes a legal, valid, and effective transfer of the Assets, and shall vest the Purchaser with all of the right, title, and interest of the Debtor in and to the Assets as set forth in the APA, as applicable, free and clear of all Interests or Claims of any kind or nature whatsoever.

18. To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the closing date of the Sale (the "Closing Date"), to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Purchaser as of the Closing Date as provided by the APA. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any license, permit, registration, or governmental authorization or approval relating to the operation of the Assets on account of the filing or pendency of the Bankruptcy Case or the conduct of the Sale contemplated by the APA.

G. Access to Real Property

19. Purchaser shall have an unrestricted and unencumbered license to use the Debtors' Locations through the April 30, 2025. With respect to the foregoing, the Debtor is authorized and directed to pay the landlord of the property commonly known as 901 M. DuPage Avenue and 930 N. DuPage Avenue, Lombard, IL 60148 (the "Lombard Locations"), the sum of $128,839.00 in three installments of $42,946 for Purchaser's use and occupancy of the Lombard Locations, including the Purchaser's auction of the Assets. Old National Bank authorizes this payment pursuant to the cash collateral order. Debtor and purchasers agree to vacate the Lombard Locations by April 30, 2025 and consent to the Landlord listing and showing the Lombard Locations upon reasonable notice to the Debtor. These payments shall be made in three installments on February 15, 2025, March 1, 2025, and April 1, 2025. Debtor is authorized and directed without further Order of the Court, to execute such agreements as it deems necessary with such Landlord, provided such agreements (i) are acceptable to Purchaser in its sole discretion, and (ii) provide five (5) days' written notice to the Purchaser (and others) of Debtors' Purchasers breach thereunder.

20. Pursuant to separate Order of the Court (which Order shall be acceptable to Purchaser in its sole discretion), Debtor shall be authorized and directed to pay the landlord of the real property commonly known as 1255 Gifford Rd, Elgin, IL 60120.

21. Purchaser's obligations to close under the APA, is subject to Debtor's compliance with paragraph 19 and 20 of this Order.

H. Other Provisions

22. The Purchaser shall not be liable for any claims against the Debtor, and the Debtor shall not be liable for any claims against the Purchaser, in each case, other than as expressly provided for in the APA or this Order. The Purchaser shall have no successor liability whatsoever with respect to any Interests or Claims of any nature that may exist against the Debtor, including, without limitation, the Purchaser shall not be, or to be deemed to be: (i) a successor in interest or within the meaning of any law, including any revenue, successor liability, pension, labor, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories; or (ii) a joint employer, co- employer or successor employer with the Debtor, and the Purchaser shall have no obligation to pay the Debtor's wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of the Debtor, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the APA.

Rev: 20120501_bko

23. Except as expressly permitted by the APA or this Order, all persons and entities (and their respective successors and assigns) (including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors and other creditors) holding Interests or Claims against, in or with respect to the Debtor or all or any portion of the Assets arising under or out of, in connection with, or in any way relating to the Debtor, the Assets, the operation of the Debtor's businesses, the Sale or the transfer of the Assets to the Purchaser hereby are forever permanently barred, estopped, and enjoined from asserting against the Purchaser or its affiliates, designees, successors or assigns or any of its respective property or assets (including, but not limited to, the Assets), such persons' or entities' Interests or Claims. This Order is and shall be effective as a determination that all Interests or Claims shall be and are, without further action by any person or entity, released with respect to the Assets as of the Closing. The provisions of this Order authorizing the sale of the Assets free and clear of Interests or Claims shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order. The APA and the transaction contemplated thereby shall be of full force and effect, regardless of the Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

24. All persons or entities (including without limitation, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors and other creditors) are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser, its respective affiliates, designees, successors or assigns, or any of its respective property or assets (including, but not limited to, the Assets), with respect to any (a) Interests or Claims arising under, out of, in connection with or in any way relating to the Debtor, the Assets, or the operation of the Debtor's businesses, or the Sale, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its respective affiliates, designees, successors or assigns, or any of its respective property or assets (including, but not limited to, the Assets); (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its respective affiliates, designees, successors or assigns, or any of its respective property or assets (including, but not limited to, the Assets); (iii) creating, perfecting, or enforcing any Interests or Claims against the Purchaser, its respective affiliates, designees, successors or assigns, or any of its respective property or assets (including, but not limited to, the Assets); (iv) asserting any setoff or right of subrogation or recoupment of any kind against any obligation due the Purchaser or its respective affiliates, designees, successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order, all other orders of the Court or the APA; or (vi) revoking, terminating, or failing or refusing to issue or renew any license, permit, or authorization to conduct any of the businesses operated with the Assets.

25. Except as otherwise expressly provided in the APA, the Purchaser is not, by virtue of the consummation of the Sale contemplated the APA, assuming, nor shall it be liable or responsible, as successors or otherwise (including, without limitation, with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, including, without limitation, any theory of antitrust, environmental successor or transferee liability, labor law, alter ego, de facto merger or substantial continuity, whether known or unknown, now existing or hereafter raised, which may be asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any of its predecessors or affiliates or the obligations of the Debtor or their predecessors or affiliates, for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed,

absolute, contingent, inchoate, fixed, or otherwise) in any way whatsoever relating to or arising from the Assets or the Debtor's operation of its businesses or any such liabilities, debts, commitments, or obligations that in any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid, discharged, or performed on or prior to the Closing Date, or any liabilities calculable by reference to the Debtor or their assets or operations, or relating to continuing conditions existing on or prior to the Closing Date, including, without limitation, with respect to any of the Debtor's predecessors or affiliates, which liabilities, debts, commitments, and obligations are hereby extinguished insofar as they may give rise to successor liability, without regard to whether the claimant asserting any such liabilities, debts, commitments, or obligations has delivered to the Purchaser a release thereof. Without limiting the generality of the foregoing and except for the Assumed Liabilities and as otherwise expressly provided in the APA, by virtue of the consummation of the Sale contemplated by the APA, the Purchaser shall not be liable or responsible, as a successor or otherwise (including, without limitation, with respect to successor or vicarious liabilities of any kind or character) under any theory of law or equity, for the Debtor's liabilities, debts, commitments, or obligations arising under or in connection with: (a) environmental liabilities, debts, claims, or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.; (b) any bulk sales or similar law; (c) any liabilities, debts, commitments, or obligations of, or required to be paid by, the Debtor for any Taxes of any kind for any period; (d) any liabilities, debts, commitments, or obligations for any Taxes relating to the Assets for or applicable to the pre-closing period; (e) any litigation; and (f) any products liability, other tort, or similar claims, whether pursuant to any state or any federal laws or otherwise, including, without limitation, those arising from products or distribution thereof by or on behalf of Debtor.

26. The Purchaser has given substantial consideration under the APA for the benefit of the holders of any Interests or Claims. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Interests or Claims against or in the Debtor or any of the Assets.

27. The Purchaser is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, the various procedures contemplated herein, any issues related to or otherwise connected to the Sale and/or the APA.

28. Nothing contained in any plan confirmed in the Debtor's chapter 11 case or any order of this Court confirming such plans or in any other order in the Debtor's case (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the APA or the terms of this Order.

29. The APA and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, provided that no such modification, amendment (including to allow for the assumption and assignment to Purchaser of any leased personal property for which Purchaser agreed to fund cure costs) or supplement that is materially adverse to the Debtor or any other party in interest shall be effective without further order of the Court.

30. Notwithstanding Bankruptcy Rules 4001, 6004, 7062 and 9014, or any other law that might serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Purchaser are free to perform under the APA at any time, subject to the terms of the APA.

31. To the extent that anything contained in this Order explicitly conflicts with a provision in the APA, this Order shall govern and control.

32. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33. No bulk sales law, bulk sales tax law or any similar law of any state or other jurisdiction applies in any way to the Sale contemplated by the APA.

34. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Court, (a) to allow the Purchaser to give the Debtor any notice provided for in the APA, (b) to allow the Purchaser to take any and all actions permitted by the APA in accordance with the terms and conditions thereof, including, without limitation, effectuating the Sale contemplated by the APA and (c) to otherwise implement the terms and provisions of the APA and this Order.

35. This Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to or arising under this Order or the APA, including Purchaser's post-Closing obligations under the Assigned Contracts.

Enter:

_Jacqueline P. Cox_
_J. Cox_

Dated:  *Feb. 11, 2025*

United States Bankruptcy Judge

**Prepared by:**
Mr. Paul M. Bach, Esq.
Ms. Penelope N. Bach
Bach Law Offices
P.O. Box 1285
Northbrook, Illinois 60065
Phone (847) 564 0808

Rev: 20120501_bko